**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VERNA K.[1],
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 3:25-cv-00223
Newman, J.
Litkovitz, MJ.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Verna K. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Disability Insurance Benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply (Doc. 14).

**I.**      **Procedural Background**

Plaintiff protectively filed an application for DIB in September 2022, alleging disability since August 10, 2021, due to type 2 diabetes, spondylolisthesis of the lumbar region, anxiety, depression, burning/shooting pain in legs and hips, anemia, gastroesophageal reflux disease, Schatzki's ring, esophagitis, hypertension, and back pain. (Tr. 273-76, *see also* Tr. 345). Her application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Jacquelyn A. McClinton. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on February 22, 2024. (Tr. 122-58). On March 29, 2024, the ALJ issued a decision denying plaintiff's application. (Tr. 7-29). On May 7, 2025, the Appeals Council denied

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

## II.     Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render a claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

2

steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2027.

2. [Plaintiff] engaged in substantial gainful activity from February of 2022 through September 30, 2022.  (20 CFR 404.1571 *et seq.*).

3. From October 1, 2022 through the present, [plaintiff] has not engaged in substantial gainful activity.

4. [Plaintiff] has the following severe impairment[s]: spondylolisthesis of the lumbar region/back pain, and obesity (20 CFR 404.1520(c)).

5. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [she] can occasionally climb ramps and stairs; can occasionally balance and stoop.  [She] [c]an never climb ladders, ropes, and scaffolds.  [She] [i]s able to handle few changes in the work routine with no production quotas.  [She] [c]an perform no overhead reaching.  [She] [m]ust avoid unprotected heights and hazardous machinery.

[Plaintiff] is capable of performing past relevant work as an office coordinator, pharmacy technician, as generally and actually performed and the support specialist job as actually performed.  This work does not require the performance of work-

3

related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 10, 2021, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12-24).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an

ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)).

### D.  Specific Errors

On appeal, plaintiff contends that the ALJ erred by failing to find any severe mental health impairment at step two of the sequential evaluation and subsequently failing to incorporate an associated limitation in formulating the RFC.  (Doc. 7 at PageID 2078-2084; Doc. 14 at PageID 2108-2113).  The Commissioner counters that the ALJ thoroughly considered plaintiff's limited mental health treatment (which consisted of medication and six therapy sessions), the effectiveness of the treatment, and generally normal mental examination findings. The Commissioner further contends that, although the ALJ found plaintiff's mental impairments non-severe, she nevertheless incorporated work restrictions related to depression and anxiety into plaintiff's RFC.  (Doc. 13 at PageID 2099-2106).

At step two of the sequential evaluation process, a claimant bears the burden of demonstrating a severe impairment expected to last more than 12 months. [2]  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). A claimant is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a "*de minimis* hurdle" designed to "screen out

---

[2] In assessing the severity of a psychological impairment, an ALJ considers a claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a (c)(3).  The degree of limitation is assessed using a five-point scale: "None, mild, moderate, marked, and extreme."  § 404.1520(c)(4).  A "mild" limitation indicates that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  § 404, Subpt. P, App. 1 § 12.00F2b.  A "mild" limitation equates with a "non[-]severe" limitation indicating no more than minimal effect on a claimant's work-related activities. § 404.1520(d).  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  § 404.1522.

totally groundless claims." *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) and *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009), respectively). *See also Higgs*, 880 F.2d at 862.

Once a claimant clears step two of the sequential analysis, the ALJ "must then 'consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four." *Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (quoting 20 C.F.R. § 404.1545(e)) (emphasis added). Since deciding *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987), the Sixth Circuit has repeatedly found it "unnecessary to decide" whether an ALJ erred in classifying a particular impairment as "non-severe" at step two as long the ALJ considered the impairment in the step four analysis. *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 598 (6th Cir. 2018); *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [a claimant's] impairments [are] not deemed to be severe at step two is . . . legally irrelevant."). However, the Sixth Circuit has limited the holding in *Maziarz* where an ALJ does "not consider . . . mental impairments in a meaningful way[,]" *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015), or "does not accurately state the evidence used to support his finding," *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009).

In this case, the ALJ recognized plaintiff's anxiety and depression at step two. (Tr. 13-14). However, she found those impairments "non-severe" because plaintiff's overall mood was stable, situational stress was improved, and medication achieved "sufficient results." (Tr. 14, citing Tr. 1252).

The ALJ specifically considered the four functional areas known as the "paragraph B" criteria. (Tr. 14). She found a mild limitation in understanding, remembering or applying information as plaintiff managed her own medications (Tr. 14, citing Tr. 1820) and indicated she followed written instructions well as long as they were "easy to follow." (Tr. 14, citing Tr. 360). The ALJ noted plaintiff's statements that she had trouble remembering oral instructions, names, and directions. (Tr. 14, citing Tr. 360, 362). The ALJ found a mild limitation in interacting with others because plaintiff indicated that she had no problems getting along with family, friends, neighbors, or others; had no problems getting along with authority figures; enjoyed visiting with her daughter and grandchildren; and attended church and her grandchildren's soccer games regularly. (Tr. 14, citing Tr. 359-60). In addition, plaintiff reported strong social connections, and her medical records noted plaintiff's normal mood and thought content. (Tr. 14, citing Tr. 1817, 1257 respectively).

The ALJ found a mild limitation in concentrating, persisting, or maintaining pace. (Tr. 14). Plaintiff reported being able to pay bills, count change, manage a savings account, use a checkbook, drive a car, read, and watch television. (Tr. 14, citing, Tr. 358-59). She also reported teaching children's bible school at her church. (Tr. 14, citing Tr. 1816). The ALJ also found a mild limitation in adapting or managing oneself. (Tr. 14). In support of this finding, the ALJ noted plaintiff's self-reported ability to drive a car, grocery shop, pay bills, prepare simple meals, stand in the shower (with access to grab bars and chair), sometimes vacuum, do laundry with the use of a metal grabber, and do dishes with breaks due to physical challenges. (Tr. 14, citing 139-40, 356-57). She enjoys pool exercise and yoga, cared for her son's 10 pets while he was out of town for a week, and attended a local fireworks show. (Tr. 14, citing Tr. 1816-17, 1841). However, plaintiff indicated that she does not handle stress well and changes in routine

7

make her very nervous.  (Tr. 14, citing Tr. 361).  As the ALJ accurately detailed the evidence in support of her non-severe finding and continued through the sequential evaluation process, the ALJ's non-severe finding is supported by substantial evidence unless the ALJ failed to meaningfully consider plaintiff's mental health-related limitations in forming her RFC.  *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015).  *See also Ryan A. v. Comm'r of Soc. Sec.*, No. 1:24-cv-475, 2025 WL 1752000, *4 (S.D. Ohio June 25, 2025).

The issue, then, is whether the ALJ erred by failing to meaningfully consider the limiting effects of plaintiff's impairments—even if non-severe—when determining plaintiff's RFC. ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."  SSR 16-3p, 2016 WL 1119029, at *2.  ALJs also evaluate the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

*See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4.  In making this

determination, the ALJ will consider the following:

> (i)  Your daily activities;
>
> (ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii)  Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability

unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5

("If we cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must

> contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

In making her RFC finding, the ALJ specifically found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, including feelings of nervousness or being overwhelmed when learning new skills. (Tr. 16-17). However, the ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms not entirely consistent with the medical and other evidence in the record. (Tr. 17). The ALJ noted that plaintiff's June 28, 2022 medical records indicate that her "stress level had improved with transition to new job" at a physical therapy office and the prescribed "Lexapro was working well for her." (Tr. 18, citing Tr. 1271).

By August 30, 2022, plaintiff had increased her Lexapro dose from 5 mg to 10 mg daily and quit her job at the physical therapy office because they transferred her to a different location with a poor work environment and a lack of management support. (Tr. 19, citing Tr. 1260). In addition, she reported difficulty transitioning to a different computer program, was experiencing nightmares, and had difficulty with home responsibilities. (*Id.*). On examination, her mood was anxious, but she was cooperative and alert with normal attention and thought content and did not exhibit acute distress. (Tr. 20, citing Tr. 1262). The ALJ noted that plaintiff's activities of daily living (including homeschooling her grandchildren prior to a change in their mother's work schedule, cleaning and organizing her home, selling unused items online, performing the

10

majority of household chores, caring for her disabled husband, attending soccer games, swimming, engaging in yoga for seniors, and attending a women's retreat) indicate that her mental health symptoms are not as limiting as alleged.  (Tr. 19-20, citing Tr. 1811, 1812, 1836, 1845).

Charles J. Uhl, Certified Nurse Practitioner, diagnosed plaintiff's anxious depression and referred her to Kappi Hickman, M.S.W., L.I.S.W., for counseling which began on June 1, 2023.  (Tr. 1850, 1857).  At that time, plaintiff's mental health questionnaires revealed severe depression and anxiety.  (Tr. 19, Tr. 1852).  Following six therapy sessions with Ms. Hickman (Tr. 1811, 1816, 1835, 1839, 1844, 1850), plaintiff's mental health questionnaires indicated "none to minimal" depression and "no" anxiety on September 8, 2023.  (Tr. 1812, Tr. 19).  At that time, plaintiff reported "some worry about her spouse's and son's physical health issues but denied her worry significantly impacts functioning."  (Tr. 1812, Tr. 19).  To accommodate plaintiff's mental health challenges, the ALJ limited her RFC to "few changes in the work routine with no production quotas."  (Tr. 16).

Plaintiff contends that the ALJ failed to adequately accommodate the limitations opined by the Certified Nurse Practitioner who treated plaintiff's mental and physical symptoms.  (Doc. 7 at PageID 2079-80).  ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[3] including those

---

[3] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

11

from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c.

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

12

Charles J. Uhl, Certified Nurse Practitioner, completed a mental impairment questionnaire for plaintiff on February 8, 2024.  (Tr. 2030-43).  CNP Uhl indicated that, as plaintiff's primary care provider, he had seen plaintiff "every 3-6 months" since January 2, 2019.  (Tr. 2038).  CNP Uhl noted plaintiff's June 1, 2023 mental health questionnaire scores and that Lexapro and individual psychotherapy improved her mental health.  (Tr. 2039).  He noted that her mental health prognosis was "good," but he opined that her physical and psychological impairments together would cause her to be absent from work more than three times per month and off task 20% or more of a typical work week.  (Tr. 2039-40).  He also completed a form indicating that plaintiff had a marked limitation in ability to work at pace; ability to sustain regular attendance at work; and ability to work a full day without needing more than the allotted number of rest periods during the day.  (Tr. 2041). CNP Uhl indicated a moderate limitation in plaintiff's ability to complete tasks in a timely manner; ability to avoid distractions while working; ability to change activities without being disruptive; ability to respond to demands; ability to adapt to changes; ability to manage her psychologically based symptoms; and ability to set realistic goals.  (Tr. 2041).

The ALJ found CNP Uhl's mental health assessment "unpersuasive."  (Tr. 21).  After noting that CNP Uhl lacks specialized training in mental health care, the ALJ found his mental health assessment both unsupported by his own findings and inconsistent with other evidence in the record (Tr. 21-22).  As to supportability, the ALJ noted that CNP Uhl elsewhere indicated that plaintiff could be prompt and regular in attendance (Tr. 22, citing Tr. 2031) and that her overall ability to learn, recall, or use information to perform work activities was only mildly impaired (Tr. 21, citing Tr. 2042).  In addition, the ALJ noted the conflict between CNP Uhl's February 8, 2024 mental health assessment and his own records noting that plaintiff's mental

health improved with medication.  (Tr. 21).[4]  As to consistency, the ALJ concluded that CNP Uhl's assessment was inconsistent with plaintiff's self-reported "partaking in many activities that suggest she did not have significant deficits in mental functioning," including homeschooling her grandchildren, caring for her disabled husband, teaching bible school, attending a women's retreat, driving, managing her own medications, and performing her own selfcare tasks at a reduced pace.  (Tr. 21-22).  The ALJ reasonably evaluated the supportability and consistency of CNP Uhl's medical opinion and adequately articulated why she found his mental health assessment unpersuasive.  Consequently, the ALJ's decision to include in plaintiff's RFC "few changes in the work routine with no production quotas" without the additional limitations specified by CNP Uhl is supported by substantial evidence.

In sum, the ALJ's evaluation of plaintiff's non-severe mental impairments in forming plaintiff's RFC meets the Sixth Circuit's meaningful consideration requirement.  Rather than setting aside plaintiff's anxiety and depression once they were deemed non-severe at step two, the ALJ traced the full course of plaintiff's mental health treatment—beginning with the initial Lexapro prescription and dose adjustment to 10 mg per day, continuing through six individual therapy sessions with Ms. Hickman, and ending with the significant improvement documented in plaintiff's September 2023 questionnaires, which reflected "none to minimal" depression and no anxiety.  The ALJ reasonably found CNP Uhl's opinion unpersuasive in light of the contradictions within CNP Uhl's own records, his lack of specialized mental health expertise, and plaintiff's daily activities.  The ALJ then incorporated plaintiff's mental health challenges

---

[4] Although the ALJ did not provide a specific page reference in support of this finding, she cited to CNP Uhl's records earlier in her opinion noting plaintiff's improved mental health with medication and unremarkable examination findings.  (Tr. 18, citing Tr. 1271 (taking Lexapro 10 mg daily "as prescribed with good results"), Tr. 20, citing Tr. 1262 ("on examination she appeared in no acute distress with normal attention . . . mood was anxious, but behavior was cooperative . . . denied any homicidal or suicidal ideations")).

14

into specific RFC restrictions, limiting plaintiff to positions with few changes in the work routine and no production-based demands.  The ALJ meaningfully incorporated the limiting effects of plaintiff's mental health impairments in the RFC, and substantial evidence supports the ALJ's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Statement of Errors (Doc. 7) be **OVERRULED**, the Commissioner's non-disability finding be **AFFIRMED**, judgment be entered in favor of the Commissioner, and this case be closed on the docket of the Court.

Date: 6/1/2026

Karen L. Litkovitz
United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VERNA K.,
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 3:25-cv-00223
Newman, J.
Litkovitz, MJ.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).